CHARLES J. SCHUCK, Judge. ,
The Davis Trust Company, of Elkins, West Virginia, as administrator of the estate of Lucy Ward, deceased, prosecutes *189 this claim on the ground of inexcusable laxity, amounting to negligence, on the part of the prison officials in charge of the state medium security prison at Huttonsville, West Virginia, in guarding and handling the prisoners of said prison, one of whom, James Chambers, on January 20, 1945, raped and murdered the said Lacy Ward, a highly respected lady, living on a farm near the said prison. The said rape and murder took place in the barn on the farm about nine o’clock A. M., and thereafter Chambers returned to the prison without the prison authorities even knowing that he had been off the prison premises or grounds.
In this all-important claim, a careful review of the testimony is necessary to fully determine whether the prison officials were so lax in guarding the prisoner, Chambers, as to be guilty of such negligence as might reasonably lead to the commission of the crime or crimes for which Chambers was subsequently convicted and later hanged at the Moundsville prison.
The record, made up mostly of agreed stipulations and the report of the legislative committee on penitentiary made to the regular session 1945 of the West Virginia Legislature after investigating conditions at the Huttonsville prison, sets forth in minute detail the facts presented to us for our determination.
Chambers (colored) , a' life-term prisoner at the time of the Lucy Ward murder, on the first day of April, 1935, killed and murdered, by cutting her throat with a razor, one Mabel McIntyre, a colored woman, the mother of a young colored girl to whom Chambers had been paying some attentions, and to which actions her mother had seemingly been objecting. This crime took place in Wyoming county and subsequently Chambers was tried and convicted of first degree murder, with a recommendation of mercy, and thereupon sentenced to life imprisonment in the penitentiary at Moundsville. Early in the year 1941 he attacked with a knife one Ethel Goodman, also an inmate of the prison, ami cut or stabbed her on the hip. Later he was found in the said Ethel Goodman’s bath room, she at the time being employed in the Warden’s apartment, was *190 tried for this misconduct by the prison court and sentenced or placed on “red and white” indefinitely, which, as explained by the prison clerk, means confinement to his cell and two meals a day. He was so confined for a period of about sixty days. Thereafter, while working on a prison road gang, he attacked a fellow prisoner with a knife, and was later transferred to the Huttonsville prison where he remained until he committed the crime for which this claim is presented.
The report of the legislative committee on penitentiary which investigated conditions at the Huttonsville prison shortly after the Ward murder, reported, among other things, that Chambers left the institution and farm on January 20, 1945, going to the nearby Ward farm, raped and murdered Lucy Ward and returned to the prison without his absence ever being known by the prison officials; that the prisoners were allowed to visit neighboring farms, springs and orchards of their own free will and without guards; that prisoners attempted to rape other women in the vicinity of the prison, and that the officials did nothing when such conduct was reported to them; that prisoners were arrested some distance from the prison for fishing without licenses and that they were found so engaged as late as ten o'clock at night; that prisoners were in possession of keys to gas tanks and other outside buildings; that the knife with which Miss Ward was slain was one apparently taken from the prison, and that a general laxity of discipline was evident, and that no proper check of prisoners was made. Under such conditions and lax discipline Chambers had been serving his life sentence from July 27, 1944, the date of his assignment to Huttonsville, until January 20, 1945, a period of six months, when he committed the Ward murder.
It requires no stretch of the imagination to reach the cónclussion that had the proper precautions been taken by the officials and had the handling and governing of prisoners been such as the conditions and circumstances required, the brutal and dastardly crime, which is the basis of this claim, might never have been committed. Chambers was a desperate criminal, not only outside the prisons, but inside of them as well. He was a fiend *191 when in possession of a knife or razor. We have the right to assume from the facts before us that his record from the time he committed the murder in Wyoming county to the time of his transfer to the Huttonsville prison was fully known by the proper officials, and having known his record, it was an abuse of discretion and judgment to allow his transfer; this fact, coupled with the general laxity of discipline at Huttons-ville, the general disregard for the safety and security of citizens and residents from attack by uncontrolled and ungoverned prisoners confined there, and the unwarranted and improper assignment of Chambers to Huttonsville constitute negligence for which the state is morally bound to make amends.
No mere financial award can restore the life of the victim of the tragedy involved, nor heal the wounds of those who were near and dear to her. However, we feel that the state,as such, should not be unnecessarily penalized for the acts and conduct of the officials referred to, and are therefore of the opinion that an award of $3500.00 should be made, and which we believe would have the desired effect for the future conduct of the prisons in question. An award of thirty-five hundred dollars - ($3500.00) is accordingly made, payable to the claimant as administrator of the Lucy Ward estate.